1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                       SOUTHERN DISTRICT OF CALIFORINIA

10

11 | RYAN K.,[1]                              | Case No.:  23cv293-BEN (MSB)

12 |                              Plaintiff,  | **REPORT AND RECOMMENDATION ON**

13 | v.                                       | **PLAINTIFF'S OPENING BRIEF**
                                               **[ECF NO. 11]**
14 | MARTIN O'MALLEY, Commissioner of
   | Social Security,[2]
15 |
   |                             Defendant.
16 |

17

18        This Report and Recommendation is submitted to the Honorable Roger T. Benitez,

19 United States District Judge, pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(c)

20 of the United States District Court for the Southern District of California.  On February

21 14, 2023, Plaintiff Ryan K. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. §§ 405(g)

22 and 1383(c)(3), seeking judicial review of a final adverse decision by the Commissioner

23

24 _____

[1] Under Civil Local Rule 7.1(e)(6)(b), "[o]pinions by the court in [Social Security cases under 42 U.S.C. §
25 405(g)] will refer to any non-government parties by using only their first name and last initial."
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  See SSA
26 Commissioner, https://www.ssa.gov/agency/commissioner/ (last visited on February 29, 2024).
Accordingly, Martin O'Malley is substituted for Kilolo Kijakazi as the Defendant in this lawsuit.  See Fed.
27 R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity
dies, resigns, or otherwise ceases to hold office while the action is pending.  The officer's successor is
28 automatically substituted as a party").

of Social Security ("Commissioner").  (ECF No. 1.)  Now pending before the Court is "Plaintiff's Opening Brief," claiming error by the Administrative Law Judge ("ALJ") who conducted the administrative hearing and issued the decision denying Plaintiff's application for disability insurance benefits and supplemental security income.  (ECF No. 11 ("Mot.").)  On August 18, 2023, the Commissioner filed "Defendant's Responsive Brief."  (ECF No. 16 ("Opp'n").)  Finally, on August 31, 2023, Plaintiff filed a Reply.  (ECF No. 17 ("Reply").)  The Court has carefully reviewed the Complaint [ECF No. 1], the Administrative Record ("AR") [ECF No. 8], and the parties' pleadings [ECF Nos. 11, 16, 17].  For the reasons set forth below, the Court **RECOMMENDS** that Plaintiff's Opening Brief be **GRANTED in part**, that the Commissioner's decision be **REVERSED**, and that this matter be **REMANDED** for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## I.        PROCEDURAL BACKGROUND

On October 16, 2020, Plaintiff filed applications under Titles II and XVI for a period of disability, disability insurance benefits, and supplemental security income.  (AR 230–48.)  Both applications alleged inability to work beginning on May 19, 2020.  (Id.)  The Commissioner denied his applications initially on February 12, 2021, and again upon reconsideration on May 21, 2021.  (AR 85–86, 113–14.)  On May 25, 2021, Plaintiff requested an administrative hearing.  (AR 133–34.)  ALJ Howard K. Treblin held a telephonic hearing on September 27, 2021, during which Plaintiff appeared with counsel; Plaintiff and a vocational expert, Donald H. Davis, testified.  (AR 43–60.)

In a written decision dated January 27, 2022, the ALJ found Plaintiff had not been under a disability from May 19, 2020, through the date of the ALJ's decision.  (AR 24–33.)  On March 24, 2022, Plaintiff requested review of the ALJ's decision.  (AR 229.)  The Appeals Council denied Plaintiff's request on December 16, 2022, making the ALJ's decision final.  (AR 2–4.)  See also 42 U.S.C. § 405(g).  This timely civil action followed.

/ / /

/ / /

## II.    SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process.  See 20 C.F.R. § 404.1520.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 19, 2020, the alleged onset date.  (AR 27.)  At step two, the ALJ found that Plaintiff has the following severe impairments that significantly limit his ability to perform basic work activities: "lumbar spondylosis, with lumbar radiculopathy and lumbar disc bulges, status-post micro discectomy."  (Id.)  The ALJ also considered hemorrhoids because Plaintiff "reported left lower quadrant abdominal pain and rectal bleeding;" the ALJ determined this condition was non-severe because it did not represent more than a minimal limitation on Plaintiff's ability to perform basic work activities.  (Id.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment in the Commissioner's Listing of Impairments.  (Id.)  Specifically, the ALJ concluded that Plaintiff's impairments did not meet the criteria for the following listed impairments: 1.15 disorders of the skeletal spine;[3] 1.16 lumbar spinal stenosis;[4] and 11.14 peripheral neuropathy.[5]  (Id.)  See also 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Based on his evaluation of the full record, the ALJ determined Plaintiff had the residual function capacity ("RFC") to perform:

> medium work . . . such that he is limited to lift/carry 50 pounds occasionally and 25 pounds frequently; stand/walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; frequently climb ramps/stairs, balance, stoop, kneel, crouch, or crawl; and occasionally climb ladders, ropes, or scaffolds.

(AR 28.)

---

[3] The ALJ determined Listing 1.15 was not met because, although Plaintiff "reported having lower back pain that radiated to the lower extremity," examinations did not reveal the "requisite motor and sensory defects" and Plaintiff had "no documented medical need for an assistive device."  (AR 28.)

[4] The ALJ determined Listing 1.16 was not met because "the evidence does not show cauda equine involvement."  (Id.)

[5] The ALJ determined Listing 11.14 was not met because Plaintiff did not have "the requisite motor defects" and did not have marked limitation in physical or mental functioning.  (Id.)

1       The ALJ found that Plaintiff's medically determinable impairments could

2 reasonably be expected to cause the alleged symptoms; however, he noted "the

3 intensity, persistence and limiting effects of these symptoms are not entirely consistent"

4 with the medical and other evidence.  (AR 29.)  At step four, the ALJ found Plaintiff could

5 perform his past relevant work as a heating and air conditioning installer and servicer

6 because such work "does not require the performance of work-related activities

7 precluded by [Plaintiff's RFC]."  (AR 31.)  In addition to past relevant work, the ALJ

8 determined there are other jobs in the national economy that Plaintiff could perform,

9 such as assembler, electronic accessory (DOT 729.687-010); assembler, small products

10 (DOT 706.684-022); and assembler, production (DOT 706.687-010).  (AR 32.)  Therefore,

11 the ALJ concluded that Plaintiff was not under a disability as defined by the Social

12 Security Act from May 19, 2020, through the date of his decision.  (AR 33.)

13                   **III.     DISPUTED ISSUES**

14       Plaintiff raises three issues, which he asserts are grounds for reversal:

15     1.  Whether the ALJ provided clear and convincing reasons for discounting

16         Plaintiff's allegations of pain and physical dysfunction;

17     2.  Whether the ALJ properly evaluated the opinion of Dr. Omar Hussamy, M.D.;

18     3.  Whether the ALJ properly relied upon the opinion of a state agency non-

19         examining medical source.

20 (Mot. at 5–6.)

21                  **IV.     STANDARD OF REVIEW**

22       Section 405(g) of the Social Security Act allows unsuccessful applicants to seek

23 judicial review of the Commissioner's final decision.  <u>See</u> 42 U.S.C. § 405(g).  The scope

24 of judicial review is limited, and the denial of benefits will only be disturbed if it is not

25 supported by substantial evidence or contains a legal error.  <u>Luther v. Berryhill</u>, 891 F.3d

26 872, 875 (9th Cir. 2018) (internal citations omitted).  "Substantial evidence" is a "'term

27 of art used throughout administrative law to describe how courts are to review agency

28 factfinding.'"  <u>Biestek v. Berryhill</u>, 139 S. Ct. 1148, 1154 (2019) (quoting <u>T-Mobile S., LLC</u>

1  v. City of Roswell, Ga., 135 S. Ct. 808, 815 (2015)).  The Supreme Court has said

2  substantial evidence means "more than a mere scintilla," but only "such relevant

3  evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

4  (quoting Consol. Edison Co. of New York v. N.L.R.B., 305 U.S. 197, 229 (1938)).  The

5  Ninth Circuit explains that substantial evidence is "more than a mere scintilla, but less

6  than a preponderance."  Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (quoting

7  Desrosiers v. Sec'y of Health & Hum. Servs., 846 F.2d 573, 576 (9th Cir. 1988).

8       Where the evidence is susceptible to more than one rational interpretation, the

9  ALJ's decision must be upheld.  See Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir.

10  2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  This includes

11  deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.

12  See Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Even if the reviewing court finds

13  that substantial evidence supports the ALJ's conclusions, the court must set aside the

14  decision if the ALJ failed to apply the proper legal standards in weighing the evidence

15  and reaching his or her decision.  See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d

16  1190, 1193 (9th Cir. 2004).  The reviewing court may enter a "judgment affirming,

17  modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing

18  court may also remand the case to the Social Security Administration for further

19  proceedings.  Id.  However, the reviewing court "may not reverse an ALJ's decision on

20  account of an error that is harmless."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir.

21  2012).

22                           **V.     DISCUSSION**

23  **A.  Whether the ALJ Provided Clear and Convincing Reasons for Discounting**

24      **Plaintiff's Allegations of Pain and Physical Dysfunction**

25      **1.     Summary of the parties' arguments**

26       Plaintiff contends the ALJ's asserted reasons for discounting his testimony do not

27  meet the clear and convincing standard.  (Mot. at 6–16.)  First, the ALJ's assertion that

28  Plaintiff's daily activities suggested his conditions were not as disabling as alleged

1 erroneously relied on an isolated note that Plaintiff rode a bicycle.  (Id. at 12–13.)

2 Second, the ALJ's assertion that Plaintiff's treatment was effective ignored evidence of

3 Plaintiff's persistent pain despite numerous treatment methods, including two back

4 surgeries, epidural steroid injections, trigger point injections, medications, physical

5 therapy, and chiropractic manipulations.  (Id. at 13–14.)  Third, the ALJ's assertion that

6 "examinations produced normal findings" disregarded substantial evidence showing

7 "abnormal" findings.  (Id. at 14.)  Fourth, the ALJ's assertion that Plaintiff did not have a

8 prescription for an assistive device overlooked evidence that Plaintiff routinely used

9 assistive devices.  (Id. at 15.)  Based on the foregoing, Plaintiff requests the Court

10 remand for further administrative proceedings and re-evaluation of his symptom

11 testimony.  (Id. at 16.)

12       In response, the Commissioner argues the ALJ's asserted reasons satisfy the clear

13 and convincing standard, which merely requires that the ALJ's rationale is "clear enough

14 that it has the power to convince."  (Opp'n at 2–3 (quoting Smartt v. Kijakazi, 53 F.4th

15 489, 499 (9th Cir. 2022) (internal citations omitted).)  First, the ALJ noted that Plaintiff's

16 treatments consisting of two microdiscectomy procedures and medication improved his

17 condition.  (Id. at 3–4.)  Additionally, the ALJ highlighted evidence showing that Plaintiff

18 was able to ride a bicycle after his first procedure, thereby undermining his allegations

19 that he needs to use assistive devices and spends his days laying around.  (Id. at 4–5.)

20 Moreover, the ALJ noted there was no medical evidence supporting Plaintiff's claim that

21 he needed to "lie down four or five hours a day."  (Id. at 5 (quoting AR 30, 51).)  The

22 Commissioner contends that Plaintiff highlights "positive findings" to support his

23 allegations; however, the ALJ's assessment of the record is reasonable, and Plaintiff's

24 alternative interpretation does not establish error.  (Id. at 5–6.)

25      **2.    Applicable law**

26       When evaluating a claimant's allegations regarding subjective symptoms, the ALJ

27 must engage in a two-step analysis.  Johnson v. Kijakazi, No. 19-17359, 2022 WL

28 1553259, at *1 (9th Cir. May 17, 2022); Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir.

2009); see also Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *2–3 (S.S.A. Oct. 25, 2017).  First, the ALJ must determine whether there is objective medical evidence of an underlying impairment that "could reasonably be expected to produce the pain or other symptoms alleged." Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017) (quoting Garrison v. Colvin, 759 F.3d 995, 1014–15 (9th Cir. 2014)).  The claimant is not required to show that an underlying impairment could reasonably be expected to cause the severity of the pain alleged, but only that it could have reasonably caused some degree of pain.  Vasquez, 572 F.3d at 591 (citing Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007)).

Second, if the claimant satisfies the first step and there is no evidence of malingering, then the ALJ may reject the claimant's statements about the severity of their symptoms "only by offering specific, clear and convincing reasons for doing so." Trevizo, 871 F.3d at 678 (quoting Garrison, 759 F.3d at 1014–15).  "The clear and convincing standard is the most demanding required in Social Security cases."  Revels, 874 F.3d at 655 (quoting Garrison, 759 F.3d at 1014–15).  General findings are insufficient, and the ALJ must identify which specific symptom statements are being discounted and what evidence undermines those claims.  See Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citing Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014)); Burch, 400 F.3d at 680.  An ALJ's failure to identify specific statements and explain why they are not credible constitutes harmful error because it precludes meaningful review.  Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015); SSR 16-3P, 2017 WL 5180304, at *10 ("The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.").

"[B]ecause symptoms, such as pain, are subjective and difficult to quantify," the ALJ considers "all of the evidence presented," including information about the

1  claimant's prior work record, statements about their symptoms, evidence submitted by

2  their medical sources, and observations by the Agency's employees and other persons.

3  20 C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3).  Factors the ALJ may consider, in

4  addition to objective medical evidence, include Plaintiff's daily activities; the location,

5  duration, frequency, and intensity of their pain or other symptoms; precipitating and

6  aggravating factors; the type, dosage, effectiveness, and side effects of any medication

7  taken to alleviate pain; treatment; and any other measures used to relieve pain.  See 20

8  C.F.R. § 404.1529(c)(3); 20 C.F.R. § 416.929(c)(3); SSR 16-3P, 2017 WL 5180304, at *7–8.

9  The ALJ may also consider inconsistencies between Plaintiff's statements and the

10  medical evidence.  See 20 C.F.R. § 404.1529(c)(4); 20 C.F.R. § 416.929(c)(4).

11    **3.    Plaintiff's testimony**

12    At the administrative hearing on September 27, 2021, Plaintiff testified that he

13  last worked in early 2019 as a technician and plumber.[6]  (AR 48.)  Plaintiff reported he

14  could lift one gallon, sit for ten to twenty minutes before needing to change position,

15  walk for about five minutes at a time with a limp, and stand in place for thirty seconds

16  before needing to move his legs.  (AR 49.)  Additionally, he testified he uses a cane,

17  mobile scooter, and back brace.  (AR 50, 53.)  When asked what he does throughout the

18  day, Plaintiff answered that he spends four or five hours laying down and "[I] lay around

19  and try to get better.  I'm trying to get to a point where I could be the man that I used

20  to."  (AR 51, 53.)  Plaintiff explained that he will be walking normally, "then like two

21  seconds later I'll just be in horrible pain."  (AR 53.)

22    Regarding his surgery history, Plaintiff testified that he initially improved after his

23  first L4-L5 back surgery, but his second L5-S1 back surgery "totally messed [my back]

24  up."  (AR 50.)  Plaintiff said he elected to get the second surgery due to pain in his left

---

[6] A Disability Report completed on December 9, 2020, indicates Plaintiff had three jobs in the last
fifteen years: (1) heating, ventilation, and air conditioning ("HVAC") technician from June 2003 to
November 2018; (2) plumber from November 2018 to January 2020; and (3) plumber from January
2020 to May 2020.  (AR 275.)  The same jobs are reflected in Plaintiff's Disability Determination
Explanation at the initial level.  (AR 70, 82.)

buttocks that penetrated down his leg, which "got to the point where I was laying in my bed with the worst sciatica." (AR 51–52.)  Plaintiff felt "worse" after the second surgery, "like they hit a nerve and or did something with my muscle in my back that messed it up." (AR 54.)  He testified that he took Oxycodone pills for two to three weeks but then switched to CBD lotions that have been "working better." (AR 52.)  Finally, Plaintiff reported that following the second surgery, his doctor "pulled liquid out of my back." (AR 54.)  When Plaintiff tried to make a follow-up appointment, he said the doctor did not respond and eventually ended contact. (Id.)

### 4.    The ALJ's findings

The ALJ began his credibility analysis by summarizing Plaintiff's testimony as follows:

> The claimant alleges back impairments (Ex. 1E, 2).  At the hearing, the claimant testified to not being able to work due to back pain.  According to the claimant's testimony, he had two low back surgeries.  The claimant testified that he uses a cane and a mobility scooter.  Per the claimant's testimony, he is limited to lift/carry a gallon, walk about five minutes before rest, stand for 30 seconds before he has to move his legs, and sit for 10 to 20 minutes at a time before he has to change position; he lays down four or five hours a day.

(AR 29.)  The ALJ found that Plaintiff's medically determinable impairments could have reasonably produced the alleged symptoms.  (Id.)  However, the ALJ determined Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence." (Id.)

The ALJ then identified several reasons for discounting Plaintiff's statements.  (AR 29–31.)  First, the ALJ asserted that Plaintiff's "daily activities suggest his conditions are not as limiting as alleged." (AR 29.)  In support, he identified a treatment note from December 2020 that showed Plaintiff can ride a bicycle.  (Id. (citing AR 423, 509).)  Second, the ALJ asserted that "treatment is effective," noting that Plaintiff reported feeling much better with medication and after his October 2020 surgery.  (AR 29–30

(citing AR 510, 696).)  Third, the ALJ remarked "[t]he evidence does not substantiate disabling back impairments," then summarized various medical records pertaining to Plaintiff's back pain and treatment.  (AR 29–30.)  Fourth, the ALJ noted "the evidence does not show Plaintiff required or received a prescription for an assistive device."  (AR 30.)[7]  The ALJ summarized his credibility analysis as follows:

> [T]he claimant's assertion that he is not able to perform basic work activities is not consistent with the evidence, as it is inconsistent with his admitted activities of daily living and the treatment received.  Based on all of the evidence of record, the undersigned limited the claimant to medium work, with the additional limitations listed above.  The residual functional capacity further accounts for the claimant's back pain and left leg symptoms with a limitation of occasionally climb ladders, ropes, or scaffolds.

(AR 31.)  Ultimately, the ALJ assessed Plaintiff with the RFC to perform medium work with some non-exertional limitations.  (AR 28.)

### 5.    Analysis

The Court now undertakes the two-step analysis to determine whether the ALJ properly discounted Plaintiff's subjective testimony.  See Johnson, 2022 WL 1553259, at *1.  Neither party contests the ALJ's determination that Plaintiff has the following severe impairments: "lumbar spondylosis, with lumbar radiculopathy and lumbar disc bulges, status-post micro discectomy."  (AR 27.)  Because the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," this satisfies the first prong.  (AR 29.)  See, e.g., Vasquez, 572 F.3d at 591 (finding the ALJ satisfied step one where the "ALJ acknowledged that [plaintiff's]

---

[7] The ALJ also considered medical opinions and prior administrative medical findings.  (AR 30–31.)  First, he found Dr. Omar Hussamy's opinion not persuasive because it was "not consistent with the record" and "not supportable" by objective findings.  (AR 30.)  Second, he found the opinion of the state agency medical consultant on reconsideration persuasive, noting it limited Plaintiff to medium work and was supportable and consistent with the record.  (AR 30–31.)  Finally, he found the opinion of the state agency medical consultant at the initial level less persuasive because it limited Plaintiff to light work.  (Id.)

injuries 'could reasonably be expected to produce some of the pain and other symptoms alleged'").

Additionally, neither party alleges there is evidence of malingering.  (See generally Mot. & Opp'n.)  Thus, the ALJ may reject Plaintiff's testimony only by providing "specific, clear, and convincing" reasons.  See Brown-Hunter, 806 F.3d at 489; see also Leza v. Kijakazi, No. 21-16079, 2022 WL 819782, at *2 (9th Cir. Mar. 17, 2022).  In addition to giving clear and convincing reasons, the ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony."  Holohan v. Massanari, 246 F.3d 1195, 1208 (9th Cir. 2001).  Failure to do so is a harmful legal error, as it precludes the court from conducting a meaningful review of the ALJ's reasoning.  See Brown-Hunter, 806 F.3d at 492 ("If the ALJ fails to specify his or her reasons for finding claimant testimony not credible, a reviewing court will be unable to review those reasons meaningfully without improperly 'substitut[ing] our conclusions for the ALJ's, or speculat[ing] as to the grounds for the ALJ's conclusions' ") (quoting Treichler, 775 F.3d at 1103).  Here, the Court finds that although the ALJ identified the specific testimony that he discounted, his asserted reasons do not meet the "clear and convincing" standard.

### a. Activities of daily living

One reason the ALJ provided for discounting Plaintiff's subjective complaints was inconsistency with his activities of daily living.  An adverse credibility finding based on daily activities may be proper "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace."  Burch, 400 F.3d at 681.  However, the Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).  Further, "disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations."  Reddick v.

1   Chater, 157 F.3d 715, 722 (9th Cir. 1998) (internal citations omitted).  The ALJ cannot

2   mischaracterize statements in the record or take them out of context to reach an

3   adverse credibility finding.  Id. at 722–23.

4           Here, the ALJ asserted that Plaintiff's "daily activities suggest his conditions are

5   not as limiting as alleged."  (AR 29.)  In support, the ALJ cited a single example—a

6   December 2020 treatment note stating that Plaintiff can ride a bicycle.  (Id. (citing AR

7   423, 509).)  The ALJ did not mention any other daily activities in his written decision (see

8   AR 24–33) and concluded that Plaintiff's testimony is "inconsistent with his admitted

9   activities of daily living."  (AR 31.)  The Court finds the ALJ improperly cherry-picked the

10  bicycle notation rather than examining the broader context of Plaintiff's condition and

11  his ability to perform work activities.  See Diedrich v. Berryhill, 874 F.3d 634, 642 (9th

12  Cir. 2017) (finding error where the ALJ cherry-picked the absence of certain symptoms

13  rather than engaging in a "broader development"); Attmore v. Colvin, 827 F.3d 872, 877

14  (9th Cir. 2016) (finding error where the ALJ relied on isolated improvements that were

15  not representative of the continuing severity of the plaintiff's symptoms); Darren Jeffrey

16  C. v. Kijakazi, No. 3:21-CV-01012-AHG, 2022 WL 4474261, at *16 (S.D. Cal. Sept. 26,

17  2022) (finding the ALJ improperly cherry-picked statements in the medical record

18  without accounting for the "overall diagnostic picture").

19          The ALJ's reliance on the December 2020 treatment note is problematic for

20  several reasons.  First, the note lacks details about whether Plaintiff rode an exercise

21  bicycle or road bicycle, how long he engaged in this activity, or if he performed it more

22  than once.  (AR 423, 509.)  Second, at the administrative hearing Plaintiff testified that

23  he had not tried riding a bicycle for exercise, which calls into question the accuracy of

24  the note.  (AR 53.)  Third, Plaintiff asserts his symptoms were temporarily reduced after

25  his initial back surgery in October 2020, and thus, even if the note was accurate, it may

26  not be a true reflection of Plaintiff's functional level during a majority of the alleged

27  disability period.  (Mot. at 13.)  See also Garrison, 759 F.3d at 1018 (finding error where

28  the ALJ concluded "that a few short-lived periods of temporary improvement in

23cv293-BEN (MSB)

1    [plaintiff]'s mental health symptoms undermined [plaintiff]'s testimony").  Finally,

2    Plaintiff's ability to ride a bicycle is not demonstrative of his ability to handle the

3    demands of full-time work.  Albertson v. Colvin, 659 F. App'x 372, 374 (9th Cir. 2016)

4    (holding plaintiff's ability to complete household chores and occasionally run errands

5    was not a specific, clear, and convincing reason to reject his testimony); Garrison, 759

6    F.3d at 1016 (finding the ALJ's selective daily activity findings were erroneous because

7    they overlooked that plaintiff had to rest between activities, needed help to do the

8    activities, and could not always complete the activities given her symptoms).

9         At the administrative hearing, Plaintiff testified that he spends four or five hours

10   laying down every day and that his roommate "does my laundry and everything."  (AR

11   52–53.)  Despite this, the ALJ failed to affirmatively inquire into Plaintiff's ability to

12   perform daily activities such as laundry, cooking, cleaning, and personal care, instead

13   only asking about whether he rode a bicycle for exercise.  (See generally AR 43–60.)  The

14   Commissioner contends that "Plaintiff did not submit a function report and his

15   testimony offered very little in the way of specifics about his symptoms or limitations."

16   (Opp'n at 2.)  Yet, this ignores the fact that it is the ALJ's responsibility to "scrupulously

17   and conscientiously probe into, inquire of and explore for all relevant facts" to protect

18   plaintiff's interest.  Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1981).  The ALJ selectively

19   focused on one statement—that Plaintiff could ride a bicycle—rather than examining

20   the full context of Plaintiff's functional abilities or seeking further information.  Brown v.

21   Heckler, 713 F.2d 441, 443 (9th Cir. 1983) (explaining the ALJ has a duty "to fully and

22   fairly develop the record").  In sum, the ALJ erred because he cherry-picked Plaintiff's

23   ability to ride a bicycle, an activity that is not demonstrative of Plaintiff's ability to rejoin

24   the work force.

25                    **b.  Improvement with treatment**

26        The ALJ also found Plaintiff's symptom testimony not credible because Plaintiff's

27   condition improved with treatment.  Specifically, the ALJ cited an emergency room note

28   from July 2021, wherein Plaintiff indicated he felt "much better from the Dilaudid,

Toradol and Solu-Medrol" medications.  (AR 29 (citing AR 696).)  Additionally, the ALJ cited an October 2020 treatment note indicating that Plaintiff felt "significantly better" since undergoing surgery.  (AR 30 (citing AR 510).)  Whether treatment is effective in treating one's symptoms is a valid factor for ALJs to consider when evaluating symptom testimony.  See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017); see also Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.")  However, an ALJ cannot "reject a claimant's testimony merely because symptoms wax and wane in the course of treatment," as "[c]ycles of improvement and debilitating symptoms are a common occurrence."  Garrison, 759 F.3d at 1017.  Thus, temporary improvements "will not warrant a finding of medical improvement."  See 20 C.F.R. § 404.1594(c)(3)(iv).

Here, the ALJ improperly singled out short-lived, temporary periods of improvement without considering Plaintiff's full diagnostic picture.  See Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) ("observations [of improvement] must be 'read in context of the overall diagnostic picture' the provider draws"); Garrison, 759 F.3d at 1018 (holding improvements must be examined in the broader context of "the patient's overall well-being and the nature of her symptoms").  The Court's review of the medical record reveals that Plaintiff underwent the following treatment for his back and lower extremity dysfunction:

- May 15, 2020:  Plaintiff presented to the emergency room for "left lumbosacral pain with radiation down to the buttock and thigh." (AR 351).  Doctors diagnosed Plaintiff with back pain and sciatica and gave him Toradol medication; upon discharge, he was instructed to take Ibuprofen medication.  (AR 353–54, 361.)

- May 27, 2020:  During a follow-up appointment for back pain, Plaintiff exhibited para-vertebral muscle tenderness and spasm, he was unable to perform straight-

23cv293-BEN (MSB)

leg-raise testing due to pain, he was unable to tip toe or perform leg lifts, he had a hunching gait favoring the right leg, and he had reduced (4/5) strength.  (AR 503.)

- June 12, 2020:  An MRI on Plaintiff's lumbar spine showed disc desiccation at the L4-5 level with a 4 mm broad-based disc protrusion, moderate left lateral recess stenosis, displacement of the traversing L5 nerve root, and a 3 mm broad-based disc protrusion at L5-S1 with a central annular fissure.  (AR 491.)

- July 7, 2020:  Plaintiff reported back pain that he rated a 10 on a 10-point scale. The notes further indicate that Plaintiff had "failed conservative measures in the way of activity modifications, anti-inflammatories, gabapentin."  (AR 341.) Plaintiff was diagnosed with lumbar spinal stenosis and radiculopathy.  Dr. Bagheri opined that Plaintiff's "quality of life is severely disabled secondary to the issues[,] and he can no longer complete his activities of daily living, or work." Plaintiff decided to proceed with surgery.  (AR 343).

- August 13, 2020:  Plaintiff again presented to the emergency room for chronic lower back pain radiating down his leg.  (AR 357.)  He exhibited lumbar paraspinal tenderness and spasm during examination.  (AR 358.)  Dr. Doros noted Plaintiff was given "Lidoderm patch, Robaxin, and Toradol" and had a "slight improvement in pain."  (AR 359, 376.)

- September 26, 2020:  Plaintiff complained of increased and intractable lower back pain with associated weakness and numbness in his left lower extremity.  The notes further indicate Plaintiff had a fall several days before and was ambulating with crutches.  He had undergone two epidural injections that did not work well, and he wanted to get surgery.  (AR 386.)  Additionally, Plaintiff reported trying Gabapentin medication, which also did not work well.  Plaintiff was diagnosed with intractable lower back pain, radiculopathy, and lower left extremity weakness.  (AR 387.)  A CT scan of Plaintiff's lumbar spine was negative, but an MRI showed an L4-5 disc protrusion compressing the descending left L5 nerve roots and a broad-based disc bulge at the L3-4 and L5-S1 level.  (AR 411, 414.) Notes also indicate Plaintiff received "multiple doses of Dilaudid without adequate control [of] his pain."  (AR 402.)

- September 28, 2020:  Plaintiff's pain was so severe that he needed to keep his left leg bent and use crutches.  He had undergone physical therapy, chiropractic manipulation, anti-inflammatory medications, epidural steroid injections, and trigger point injections.  Plaintiff agreed to go forward with a left-sided minimally invasive L4-5 surgery.  (AR 520–21.)

- <u>October 15, 2020</u>: Plaintiff underwent a microdiscectomy with removal of disc fragments at the L4-5 level, as well as a left-sided laminotomy and foraminotomy. Notes indicate that Plaintiff sought surgical care having failed conservative management.  (AR 516.)

- <u>October 27, 2020</u>:  Approximately two weeks post-surgery, Plaintiff reported feeling significantly better and said his shooting pain was nearly gone.  (AR 425.)

- <u>December 21, 2020</u>:  Plaintiff continued to report doing better overall, though he still had lingering pain along his left leg.  The notes further indicate he was no longer using crutches and could ride a bicycle.  (AR 423.)

- <u>July 2021</u>:  Plaintiff sought emergency treatment for increased back pain and right-sided sciatica.  (AR 694).  A CT scan showed degenerative disc disease with a protrusion at the L4-5 level, which may be impinging upon his traversing L5 nerve root.  (AR 696.)  Later that same month, Plaintiff again sought emergency care for chronic low back pain radiating down his leg with associated numbness and weakness.  (AR 652.)  An MRI showed a disc bulge at the L5-S1 level contacting the traversing left S1 nerve root, as well as a disc bulge at the L2-3 level with possible contact with the traversing right L3 nerve root.  (AR 658.)

- <u>August 2, 2021</u>:  Plaintiff reported having lower back pain radiating down his left leg, which was severe enough that he could not meaningfully straighten or extend either leg and he was using a wheelchair.  Dr. Pham diagnosed Plaintiff with L5 radiculopathy.  (AR 643.)

- <u>August 13, 2021</u>:  Plaintiff presented with severe left-sided S1 radiculopathy, and imaging showed a herniated disk with lateral recess stenosis at L5-S1 impinging upon the traversing S1 nerve root.  Due to the severity of his pain, Plaintiff sought surgical care and underwent a left-sided L5-S1 microdiscectomy.  (AR 636–37.)

- <u>August 18, 2021</u>:  Plaintiff sought emergency care and reported that his lower back pain with associated left leg numbness was a 9 out of 10 and unrelieved by prescribed Oxycodone.  Plaintiff said his left leg symptoms were twice as bad as they were prior to his surgery.  (AR 607).  Examination revealed decreased sensation in his left lower extremity, positive straight-leg test, and "significantly reduced" left lower extremity strength.  (AR 610.)

- <u>August 25, 2021</u>:  Plaintiff's surgeon attributed ongoing pain to inflammation in the surgical area and said an MRI showed appropriate decompression (AR 603.)

- <u>September 8, 2021</u>: Plaintiff presented with worsening pain down the back of his left lower extremity and evidence of seroma under the incision site.  He was able to stand and ambulate with moderate difficulty.  (AR 555, 560).  An MRI showed enlargement around the surgical incision, with fluid collection of 4.2 cm by 0.9 cm, which was suspicious for infection.  (AR 561, 579.)

As the record demonstrates, except for a brief period of reduced symptoms after his first back surgery, Plaintiff experienced persistent and intense back and lower extremity pain from May 2020 to September 2021.  (<u>See, e.g.</u>, AR 341–43, 351–54, 357–59, 386–87, 402, 503, 520–21, 561, 607, 636–37, 643, 652, 694–96.)  Additionally, Plaintiff pursued an aggressive course of treatment consisting of epidural injections, trigger point injections, medications, physical therapy, chiropractic manipulation, and two back surgeries in October 2020 and August 2021.  (<u>See, e.g.</u>, AR 386, 516, 520–21, 636–37.)  Plaintiff's repeated attempts to obtain relief show that his symptoms were intense and persistent.  <u>See</u> SSR 16-3P, 2017 WL 5180304, at *9.  Although the ALJ cited two medical records showing that Plaintiff benefited from opioid medication during an emergency room visit [AR 696] and initially responded well to his October 2020 surgery [AR 510], the ALJ ignored numerous records demonstrating that those improvements were only temporary.  <u>See</u> 20 C.F.R. § 404.1594(c)(3)(iv) ("Improvement . . . that is only temporary will not warrant a finding of medical improvement.").  For example, in July 2021, Plaintiff sought emergency treatment multiple times for increased back pain and sciatica, a sign that his symptoms reoccurred after the initial surgery.  (AR 652, 694).  Indeed, the pain became so severe that Plaintiff decided to undergo a second procedure in August 2021.  (AR 636–37.)  Even after the second surgery, Plaintiff reported worsening pain as recently as September 2021—the same month as his administrative hearing.  (AR 555, 560).

Moreover, the ALJ failed to explain why two temporary instances of improvement should outweigh the substantial history of pain complaints found throughout Plaintiff's medical records, which were consistent with Plaintiff's hearing testimony.  In sum, the ALJ's cherry-picking of two treatment notes showing improvement mischaracterized the

nature and severity of Plaintiff's symptoms.  Attmore, 827 F.3d at 877 ("An ALJ cannot 'simply pick out a few isolated instances of improvement' ") (internal citations omitted). Because the ALJ's two selective citations do not address the overall dynamic of Plaintiff's symptoms—i.e., that Plaintiff experienced persistent and intense back and lower extremity pain—the Court finds improvement with treatment is not a clear and convincing reason for discounting Plaintiff's testimony.  Garrison, 759 F.3d at 1018; see also Leticia M. v. Kijakazi, No. 22CV953-LR, 2023 WL 6630450, at *12 (S.D. Cal. Aug. 7, 2023) ("[A]lthough Plaintiff's pain levels fluctuated month-to-month, she frequently reported high levels of pain, and her pain did not subside for any significant periods of time"); Bonnie B. v. Saul, No. 3:20-CV-00653-RBM, 2020 WL 7695332, at *8 (S.D. Cal. Dec. 28, 2020) ("Two examples of temporary periods of wellbeing in four years of alleged disability . . . hardly constitutes the broader development of improvement necessary to meet the standard").

### c.  Normal findings

Next, the ALJ discounted Plaintiff's subjective symptom testimony based on examinations that produced normal findings.  Specifically, the ALJ asserted:

> Despite some findings of reduced range of motion of the lumbar spine, lumbar tenderness, slightly reduced strength in the left lower extremity, and positive straight leg-raising tests bilaterally, examinations produced normal findings, including no deformities, normal lumbar alignment, normal strength, intact sensation, full range of motion, no extremity edema, normal reflexes, no muscle spasm, normal coordination, normal pulses, negative straight leg-raising tests bilaterally, and normal gait.

(AR 30 (citing AR 342, 352, 356, 689–90, 695–96).)

Once again, it is evident from the Court's review of the record that the ALJ selectively highlighted certain benign findings while ignoring others, which is impermissible.  Holohan, 246 F.3d at 1207 (finding error where the ALJ "selectively relied on some entries" while ignoring others showing possibly disabling impairments). For example, the ALJ cited examination notes from July 2020 showing Plaintiff presented

1   with normal lumbar alignment, strength, and range motion, as well as no deformities in

2   his extremities.  (AR 342.)  However, during that same visit, Dr. Bagheri noted that

3   Plaintiff's advanced imaging "correlates with his symptoms.  His quality of life is severely

4   disabled secondary to these issues and he can no longer complete his activities of daily

5   living, or work."  (AR 343.)  Additionally, Dr. Bagheri diagnosed Plaintiff with spinal

6   stenosis with radiculopathy and Plaintiff decided to proceed with surgical intervention.

7   (Id.)  Similarly, the ALJ cited examination notes from July 2021 showing "no bony

8   tenderness, step off, or deformity to the cervical, thoracic, or lumbar spine" and no

9   extremity edema.  (AR 695.)  However, the next page indicates a CT scan was "positive

10  for lumbar disc degeneration with a mild left posterior disc protrusion at L4-L5."  (AR

11  696.)  Thus, although Plaintiff's examinations revealed some normal findings, the ALJ

12  took these findings out of context without accounting for countervailing, abnormal

13  findings throughout the record.  This was error.

14          In conclusion, the ALJ's cherry-picking of selective "normal" findings is not a clear

15  and convincing reason for discounting Plaintiff's testimony.  See Diedrich, 874 F.3d at

16  642 (finding error where the ALJ "cherry-picked" the absence of certain symptoms when

17  discrediting plaintiff's testimony); Garrison, 759 F.3d at 1018 (explaining "the data

18  points [the ALJs] choose must in fact constitute examples of a broader development to

19  satisfy the applicable 'clear and convincing' standard"); Truman v. Saul, No.

20  218CV02129KJDNJK, 2019 WL 7584734, at *4 (D. Nev. Nov. 27, 2019), report and

21  recommendation adopted, No. 2:18-CV-2129-KJD-NJK, 2020 WL 225156 (D. Nev. Jan. 14,

22  2020) (concluding the ALJ's characterization of "consistently normal" mental status

23  findings was erroneous because the record included "abundant instances of abnormal

24  findings, in addition to instances of normal findings").

25                          **d.  Assistive devices**

26          Finally, the ALJ discredited Plaintiff's subjective symptom testimony because

27  Plaintiff did not have a medical need for an assistive device.  (AR 30 (citing AR 690).)

28  While it is true there is no prescription for an assistive device in the record, there is

1  nevertheless ample evidence that Plaintiff used assistive devices regularly due to pain

2  radiating down to his lower extremities.  First, at the hearing Plaintiff testified that he

3  used a cane, mobile scooter, and back brace.  (AR 50, 53.)  Additionally, multiple

4  treatment notes reflect that Plaintiff used crutches or a wheelchair during periods when

5  he could not fully extend his left leg or experienced pain while ambulating.  (See, e.g.,

6  AR 386, 510, 515, 520, 643, 663, 671.)  Thus, the ALJ's finding once again fails because

7  he selectively relied on the absence of a prescription, despite contradictory evidence

8  showing Plaintiff used multiple assistive devices.  See Holohan, 246 F.3d at 1207 (finding

9  error where the ALJ "selectively relied on some entries" while ignoring others).

10  **6.   Conclusion**

11  Although the ALJ provided several reasons for discounting Plaintiff's allegations of

12  pain and physical dysfunction, these reasons do not meet the high "clear and

13  convincing" standard.  Revels, 874 F.3d at 655.  Accordingly, the Court **RECOMMENDS**

14  that Plaintiff's Opening Brief be **GRANTED** as to this issue.

15  **B.  Whether the ALJ Properly Evaluated the Opinion of Dr. Omar Hussamy, M.D.**

16  **1.   Summary of the parties' arguments**

17  Plaintiff contends the ALJ failed to "properly evaluate Dr. Hussamy's opinion and

18  provide well-supported rationale for discounting his assessment of work restrictions."[8]

19  (Mot. at 19.)  As to the consistency factor, Plaintiff argues the ALJ improperly dismissed

20  Dr. Hussamy's opinion as inconsistent with a September 2021 MRI, ignoring advanced

21  imaging showing evidence of radiculopathy and nerve root compression, as well as

22  other medical evidence consistent with Dr. Hussamy's opinion.  (Id.)  As to the

23  supportability factor, Plaintiff argues the ALJ improperly concluded that three

24  examinations cited by Dr. Hussamy showed mostly benign findings while ignoring

25

26  [8] Plaintiff notes Dr. Hussamy was the only medical source to review records showing the recurrence of
Plaintiff's back and lower extremity pain after his first surgery, as well as his need for a second surgery.

27  (Mot. at 16.)  It appears the two state agency doctors did not have the opportunity to review medical
records dated after February 2021.  (See AR 63–64, 89–90 (providing a list of the evidence received,

28  which spans from December 2020 to February 2021).)

1   abnormalities within the same records.  (Id. at 20.)  Additionally, the ALJ did not address

2   other examinations that correlated with Dr. Hussamy's findings.  (Id. at 20–21.)

3          In response, the Commissioner argues the ALJ reasonably determined Dr.

4   Hussamy's opinion was not persuasive based on substantial evidence.  (Opp'n at 6–9.)

5   As to consistency, the Commissioner asserts the ALJ properly cited MRI findings and

6   other objective evidence that was at odds with Dr. Hussamy's assessment of extreme

7   limitations.  (Id. at 7.)  As to supportability, the Commissioner contends Dr. Hussamy's

8   generalized references to "low back and leg pain" did not support the level of limitation

9   he assessed.  (Id. at 7–8 (quoting AR 750, 753).)  Additionally, as the ALJ noted, many of

10  the treatment notes that Dr. Hussamy relied on did not comport with his extreme

11  findings.  (Id. at 8.)  The Commissioner also argues that the evidence Plaintiff references

12  in his Opening Brief—such as an earlier MRI showing disc herniation and displacement

13  or compression—does not undermine the ALJ's conclusion that Dr. Hussamy's opinion

14  was too extreme.  (Id. at 8–9.)  Thus, for the foregoing reasons the Commissioner

15  contends Plaintiff has failed to show error.  (Id. at 9.)

16         **2.    Applicable law**

17         Plaintiff applied for disability insurance benefits on October 16, 2020.  (AR 230–

18  48.)  Because this is after March 27, 2017, the SSA's revised regulations for considering

19  evidence apply.  See 20 C.F.R. § 404.1520c (2017).  The ALJ is not required to "defer or

20  give any specific evidentiary weight, including controlling weight, to any medical

21  opinion(s) or prior administrative finding(s)."  20 C.F.R. § 404.1520c(a).  Instead, the ALJ

22  must evaluate the persuasiveness of all medical opinions and prior administrative

23  findings ("PAMFs") and articulate his or her assessment as to each.  Id.

24         In evaluating persuasiveness, the relevant factors are supportability, consistency,

25  the relationship between the source and the claimant, the source's specialization, and

26  other factors such as the source's knowledge of other evidence and whether there was

27  subsequently submitted evidence.  20 C.F.R. §§ 404.1520c(c)(1)–(c)(5).  Though the ALJ

28  may discuss each of these factors, the regulations only require the ALJ to explain how

they considered the two most important factors—supportability and consistency.  20

C.F.R. § 404.1520c(b)(2).  "Supportability" measures the degree to which objective

medical evidence and supporting explanations buttress a medical opinion.  20 C.F.R. §§

404.1520c(c)(1); 416.920c(c)(1).  "Consistency" is the extent to which an opinion or

finding is consistent with evidence from other medical sources and non-medical sources

in the record.  20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2).  If two conflicting medical

opinions are both equally well-supported and consistent with the record, the ALJ must

explain how they considered the other persuasive factors.  20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has held that "the decision to discredit any medical opinion[]

must simply be supported by substantial evidence." Woods v. Kijakazi, 32 F.4th 785,

787 (9th Cir. 2022). See also Kitchen v. Kijakazi, 82 F.4th 732, 739 (9th Cir. 2023)

(explaining how an ALJ weighing a medical opinion must provide an explanation

supported by substantial evidence, which articulates how they considered supportability

and consistency).  The ALJ can satisfy the substantial evidence requirement "by setting

out a detailed and thorough summary of the facts and conflicting clinical evidence,

stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d

715, 725 (9th Cir. 1998) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

Ultimately, "an ALJ errs when he rejects a medical opinion or assigns it little weight

while doing nothing more than ignoring it, asserting without explanation that another

medical opinion is more persuasive, or criticizing it with boilerplate language that fails to

offer a substantive basis for his conclusion." Massey v. Kijakazi, No. 21-35986, 2022 WL

16916366, at *1 (9th Cir. Nov. 14, 2022) (quoting Garrison v. Colvin, 759 F.3d 995, 1012–

13 (9th Cir. 2014)).

### 3.    Dr. Hussamy's opinion and the ALJ's treatment thereof

Omar Hussamy, M.D. is a board-certified orthopedic surgeon who was hired to

provide his professional opinion in connection with Plaintiff's disability claim.  (AR 735,

747.)  On November 15, 2021, Dr. Hussamy reviewed medical records and completed an

interrogatory form.  (AR 749–59.)  Dr. Hussamy opined that Plaintiff could occasionally

lift and carry up to ten pounds and stand or walk a total of two hours each in an eight-hour workday.  (AR 750–51.)  Further, he opined Plaintiff could never climb stairs, ramps, ladders, or scaffolds; he could occasionally balance, stoop, kneel, crouch, and crawl; and he could have occasional exposure to environmental conditions such as unprotected heights, moving mechanical parts, and extreme temperatures.  (AR 753–54.)  Dr. Hussamy based his assessment on Plaintiff's "low back and leg pain [status post] lumbar microdiscectomy and laminectomy," citing numerous medical records.  (AR 750, 753, 754, 759 (citing AR 341–43, 423–505, 509–50, 551–677).)  He did not assess whether Plaintiff required use of a cane to ambulate, noting this was "unknown from available medical records."  (AR 751.)  Finally, Dr. Hussamy determined Plaintiff did not meet the requirements for Listing 1.15, disorders of the skeletal spine resulting in compromise of a nerve root.  (AR 758.)

In his written decision, the ALJ found Dr. Hussamy's opinion not persuasive for the following reasons:

> Dr. Hussamy's opinions are not consistent with the record.  For example, the MRI test of the lumbar spine in September 2021, which is after the second surgery, does not show any gross compression of nerve roots (Ex. 6F, 11, 29-31).  In addition, Dr. Hussamy's opinions are not supportable, as objective findings do not support the conclusions.  For example, examinations found in the pages cited by Dr. Hussamy show mostly benign physical findings (See, e.g., Ex. 1F, 8; Ex. 4F, 10; Ex. 6F, 5).  Furthermore, Dr. Hussamy did not fully complete the interrogatory form.  Therefore, the undersigned finds the opinions not persuasive.

(AR 30.)

### 4.    Analysis

Because the ALJ rejected Dr. Hussamy's opinion as unpersuasive, he was required, at minimum, to explain how he considered the supportability and consistency factors.  See 20 C.F.R. § 404.1520c(a); Woods, 32 F.4th at 791–92.  Here, the Court finds that although the ALJ invoked these factors, he failed to provide adequate reasons backed by substantial evidence for discounting Dr. Hussamy's opinion.

///

1

### a. Consistency

2       "Consistency means the extent to which a medical opinion is 'consistent . . . with

3  the evidence from other medical sources and nonmedical sources.'"  <u>Woods</u>, 32 F.4th at

4  792 (quoting § 404.1520c(c)(2)).  Here, the ALJ found Dr. Hussamy's opinion was not

5  consistent with the record because a September 8, 2021 MRI did not "show any gross

6  compression of nerve roots."  (AR 30 (citing AR 561, 579–81).)  This MRI was taken after

7  Plaintiff's second surgery on August 13, 2021 [AR 634] and was compared to another

8  MRI taken on August 18, 2021.  (AR 561.)  While the ALJ correctly noted that there was

9  no evidence of compression, a closer look at the MRI reveals mixed results.  For

10  example, the MRI impression indicates "enlargement of superficial subcutaneous rim

11  enhancing collection and subcutaneous soft tissue enhancement at the level of the

12  surgical incision site."  (AR 561, 579.)  Additionally, the notes indicate there was a 4.2 cm

13  by 0.9 cm build-up of fluid, which was suspicious for infection.  (<u>Id.</u>)  The ALJ did not

14  acknowledge these negative findings, nor did he explain why a lack of nerve

15  compression was inconsistent with Dr. Hussamy's opinion.  (AR 30.)

16       As Plaintiff points out, the ALJ also failed to address other MRIs showing more

17  significant nerve root compression and radiculopathy.  (<u>See</u> AR 491 (MRI dated June 12,

18  2020, showed disc desiccation at the L4-L5 and L5-S1 levels); AR 343 (review of an MRI

19  on July 7, 2020, showed degenerative disc disease at the L5-S1 level and displacement of

20  the left L5 nerve root); 414 (MRI dated September 27, 2020, showed disc desiccation at

21  the L4-5 and L5-S1 and mild disc space narrowing); AR 643 (MRI dated July 28, 2021,

22  showed a L5-S1 "disc bulge that is causing lateral recess stenosis to the traversing left S1

23  nerve root"); AR 658 (showing the same).)  Moreover, as previously discussed, Plaintiff

24  had a well-documented history of persistent and intense back and lower extremity pain

25  and sought a variety of treatments for relief.  (<u>See, e.g.</u>, AR 341–43, 351–54, 357–59,

26  386–87, 402, 503, 516, 520–21, 561, 607, 636–37, 643, 652, 694–96.)  The ALJ has not

27  explained why the results of one MRI should outweigh other objective evidence that is

28  consistent with Dr. Hussamy's assessment of additional limitations.

In sum, the ALJ's singular statement that Dr. Hussamy's opinion was not consistent with the September 8, 2021 MRI was not an adequate explanation supported by substantial evidence.  See, e.g., Treichler, 775 F.3d at 1103 ("ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence"); Bryan Alan L. v. O'Malley, No. 4:23-CV-00062-DKG, 2024 WL 22975, at *6 (D. Idaho Jan. 2, 2024) (holding the ALJ failed to provide an adequate explanation for his consistency finding where he provided only general statements without further explanation or citation); Shannon B. v. Comm'r, Soc. Sec. Admin., No. 6:21-CV-01144-HL, 2023 WL 371650, at *5 (D. Or. Jan. 24, 2023) (holding ALJ erred by failing to meaningfully explain how she considered the consistency factor).

### b.  Supportability

"Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  Woods, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  Here, Dr. Hussamy explained that he based his assessment on Plaintiff's "low back and leg pain [status post] lumbar microdiscectomy and laminectomy," citing numerous medical records.  (AR 750, 753, 754, 759 (citing AR 341–43, 423–505, 509–50, 551–677).)  The ALJ found Dr. Hussamy's opinion was not supportable because objective findings did not support his conclusions. (AR 30.)

As with the consistency factor, the ALJ failed to meaningfully explain why the objective evidence that Dr. Hussamy relied on was not supported.  The ALJ cited only three examinations showing "mostly benign physical findings."  (AR 30 (citing AR 342, 425, 555).)  However, once again, a closer look at these records reveals that they contained mixed results.  For example, an examination in July 2020 showed that although Plaintiff presented with normal lumbar alignment and strength, he also had a "positive straight leg raise bilaterally."  (AR 342–43.)  Additionally, during the same visit Dr. Bagheri diagnosed Plaintiff with spinal stenosis with radiculopathy and opined that Plaintiff's "quality of life is severely disabled secondary to these issues and he can no

longer complete his activities of daily living, or work."  (AR 343.)  Similarly, while a

September 2021 emergency room visit showed many normal physical findings, doctors

also noted Plaintiff had "worsening pain" down the back of his left lower extremity and

"a postoperative seroma."  (AR 555.)  Thus, the ALJ's assertion that Dr. Hussamy's

opinion was not supported because there were *some* benign physical findings was not

an adequate explanation supported by substantial evidence.  See, e.g., Brown-Hunter,

806 F.3d at 492 ("[T]he agency [must] set forth the reasoning behind its decisions in a

way that allows for meaningful review"); Bryan Alan L., 2024 WL 22975, at *6 (finding

the ALJ failed to properly evaluate supportability where he did not "explain why his own

interpretations, rather than the interpretations of the physician, are correct").

### 5.    Conclusion

Having carefully reviewed the record, the Court finds the ALJ's conclusion that Dr.

Hussamy's opinion was not persuasive is not supported by substantial evidence.[9]  Thus,

the Court **RECOMMENDS** that Plaintiff's Opening Brief be **GRANTED** as to this issue.

### C.  Whether the ALJ Properly Relied Upon the Opinion of a State Agency Source

### 1.    Summary of the parties' arguments

Finally, Plaintiff argues the ALJ erred by relying on the opinions of state agency

doctors who did not review the complete medical record.  (Mot. at 23–24.)  First, in

February 2021, Dr. Lee opined that Plaintiff could perform light work with occasional

postural activities; second, in May 2021, Dr. Subin opined that Plaintiff could perform

medium work with frequent postural activities.  (Id. at 23 (citing AR 67–68, 95–95).)

However, neither doctor reviewed records showing the recurrence of Plaintiff's pain

symptoms and need for a second back surgery.  (Mot. at 23–24.)  Rather than adopting

Dr. Subin's "outdated" opinion, Plaintiff argues the ALJ had a duty to develop the record

further.  (Id. at 23.)  Because the ALJ rejected Dr. Hussamy's opinion—the only one that

---

[9] The ALJ also seems to discredit Dr. Hussamy's opinion because he "did not fully complete the interrogatory form."  (AR 30.)  The Court is satisfied by Dr. Hussamy's answer that he refrained from assessing certain questions due to a lack of information.  (AR 751.)

1   considered the complete medical record—Plaintiff contends the ALJ should have

2   consulted another medical source to interpret the new evidence.  (Id. at 24.)

3          In response, the Commissioner contends Plaintiff points to no authority

4   establishing that an ALJ may not find a medical opinion persuasive simply because the

5   provider did not review the complete medical record.  (Opp'n at 9–11.)  Further, the

6   Commissioner argues Plaintiff erroneously relies on outdated regulations and caselaw

7   and overstates the ALJ's duty to develop the record, which only occurs when the record

8   is ambiguous or inadequate to allow for a determination.  (Id. at 9.)  The Commissioner

9   asserts any suggestion that the ALJ must hire a new medical expert to review and

10  translate medicals records is wrong, as the ALJ is the one tasked with translating

11  information into an RFC.  (Id. at 10.)  Here, the ALJ "considered the PAMF in the context

12  of the entire record and reasonably found the findings on reconsideration limiting

13  Plaintiff to medium work to be persuasive."  (Id. (citing AR 30).)  Thus, the Commissioner

14  maintains the Court should reject Plaintiff's argument that this finding was erroneous

15  simply because the ALJ had more records available to him than the state agency doctor.

16  (Opp'n at 11.)

17         **2.     Applicable law**

18         20 C.F.R. § 404.1520c makes clear that the persuasiveness analysis for medical

19  opinions and PAMFs is identical.  See 20 C.F.R. § 404.1520c(a) (referring to medical

20  opinions and PAMFs collectively throughout the section).  Accordingly, the same factors

21  used to evaluate Dr. Hussamy's opinion apply here.  See supra Part V.B.2 (outlining

22  applicable law for evaluating medical opinions and PAMFs).

23         **3.     Analysis**

24         In May 2021 at the reconsideration level, D. Subin, M.D., opined that Plaintiff

25  could perform medium exertion with frequent postural activities, except he could only

26  occasionally climb ladders, ropes, or scaffolds.  (AR 94–96.)  In his written decision, the

27  ALJ found Dr. Subin's PAMF more persuasive than Dr. Lee's PAMF at the initial level,

28  explaining:

1
2
3
4
5
6
7
8
9
10

The assessment of the state agency consultant on reconsideration is more consistent with the record.  For example, the MRI test of the lumbar spine in September 2021, which is after the second surgery, does not show any gross compression of nerve roots (Ex. 6F, 11, 29-31).  Of note, the claimant reported feeling much better with medications (Ex. 7F, 19).  Examinations produced mostly benign physical findings (See, e.g., Ex. 6F, 5, 9; Ex. 7F, 13, 18).  There is no medical evidence to support a need to lie down four or five hours a day.  In addition, the state agency consultant's assessment is supportable, as an adequate explanation supports the conclusions. The residual functional capacity accounts for all of the claimant's severe physical impairments with a limitation of medium work, with the additional limitations listed above. The residual functional capacity further accounts for the claimant's back pain and left leg symptoms with a limitation of occasionally climb ladders, ropes, or scaffolds.

11

(AR 30–31.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

The Court finds the ALJ did not err by finding Dr. Subin's PAMF persuasive even though Dr. Subin did not have the opportunity to view the entire medical record.  First, Plaintiff identifies no authority holding that an ALJ may not find a PAMF persuasive if a claimant offers additional records at the hearing.  Additionally, Ninth Circuit courts have held that state examiners' opinions are not rendered unsupported simply because they do not review every record.  See Maliha K. v. Saul, No. 8:19-CV-00877-MAA, 2020 WL 2113671, at *6 (C.D. Cal. May 4, 2020) ("[T]he fact that a non-examining state agency physician fails to review the entire record does not, by itself, mean that his or her opinion cannot serve as substantial evidence"); see also Hardin v. Comm'r of Soc. Sec. Admin., No. CV-21-08060-PCT-DGC, 2022 WL 4092644, at *4 (D. Ariz. Sept. 7, 2022), aff'd sub nom. Hardin v. Kijakazi, No. 22-16517, 2023 WL 6567890 (9th Cir. Oct. 10, 2023) (collecting cases where courts found no error despite records post-dating the state examiners' review).  Indeed, because "there is always some time lapse between a consultant's report and the ALJ hearing and decision," a requirement to review all post-dated records would be impossible for the swift resolution of cases.  Owen v. Saul, 808 F. App'x 421, 423 (9th Cir. 2020).

/ / /

23cv293-BEN (MSB)

It is the ALJ's responsibility, not the claimant's physicians or state agency's physicians, to determine an individual's RFC.  <u>See</u> 20 C.F.R. § 404.1545.  And contrary to Plaintiff's assertion, the fact that there were medical records that post-dated Dr. Subin's PAMF did not by itself trigger a duty to further develop the record.  <u>See, e.g.</u>, <u>Ginger R. v. Kijakazi</u>, No. 20-CV-02524-JLS-JLB, 2022 WL 2713352, at *7 (S.D. Cal. July 13, 2022), , <u>report and recommendation adopted sub nom.</u> <u>Reese v. Kijakazi</u>, No. 20-CV-2524 JLS (JLB), 2022 WL 16630587 (S.D. Cal. Sept. 7, 2022) ("An ALJ's duty to further develop the record is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); <u>Trevino v. Comm'r of Soc. Sec.</u>, No. 1:19-CV-01632-EPG, 2021 WL 620700, at *1 (E.D. Cal. Feb. 17, 2021) ("The ALJ did not have a duty to further develop the record solely because the record contained medical records post-dating the non-examining State agency physicians' review").  As Plaintiff admits, the ALJ consulted with a medical expert, Dr. Hussamy, who reviewed the entire record before formulating his opinion.  (Mot. at 23.)  Thus, there was no need for the ALJ to go a step further and consult an additional medical expert to do the same. Finally, when assessing the persuasiveness of Dr. Subin's PAMF the ALJ invoked the proper consistency and supportability factors and provided substantial evidence for his determination.  (<u>See</u> AR 30–31.)  Thus, the ALJ met the requirements under the revised regulations for evaluating Dr. Subin's PAMF and Plaintiff has failed to show error.  <u>See</u> 20 C.F.R. § 404.1520c(a); <u>Woods</u>, 32 F.4th at 791–92.

**4.     Conclusion**

For the foregoing reasons, the ALJ did not err by finding Dr. Subin's PAMF persuasive even though Dr. Subin did not have the opportunity to view later medical records.  Therefore, the Court **RECOMMENDS** that Plaintiff's Opening Brief be **DENIED** as to this issue.

## VI.     CONCLUSION

The reviewing court may enter a "judgment affirming, modifying, or reversing" the Commissioner's decision.  42 U.S.C. § 405(g).  The reviewing court may also remand

1  the case to the Social Security Administration for further proceedings.  Id.  The reviewing

2  court has discretion in determining whether to remand for further proceedings or award

3  benefits.  See Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); McAllister v. Sullivan,

4  888 F.2d 599, 603 (9th Cir. 1989).  Remand for further proceedings is warranted where

5  additional administrative proceedings could remedy defects in the decision.  See Kail v.

6  Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  Remand for the payment of benefits is

7  appropriate where no useful purpose would be served by further administrative

8  proceedings, where the record has been fully developed, or where remand would

9  unnecessarily delay the receipt of benefits to which the disabled plaintiff is entitled.  See

10  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004); Hoffman v. Heckler, 785 F.2d

11  1423, 1425 (9th Cir. 1986); Bilby v. Schweiker, 762 F.2d 716, 719 (9th Cir. 1985); Kornock

12  v. Harris, 648 F.2d 525, 527 (9th Cir. 1980).

13        Here, Plaintiff asks the Court to remand this matter for further administrative

14  proceedings.  (Mot. at 16, 22, 24–25.)  Defendant asks the Court to affirm the ALJ's

15  decision, arguing it is free of harmful legal error and supported by substantial evidence.

16  (Opp'n at 11.)  For the reasons discussed above, we find that remanding for further

17  proceedings could remedy the defects in the ALJ's decision.  Accordingly, the Court

18  **RECOMMENDS** that Plaintiff's Opening Brief be **GRANTED in part**, that the

19  Commissioner's decision be **REVERSED**, and that this matter be **REMANDED** for further

20  proceedings pursuant to sentence four of 42 U.S.C. § 405(g).  On remand, the Court

21  specifically directs the ALJ to re-evaluate Plaintiff's symptom testimony and Dr.

22  Hussamy's opinion and conduct a new five-step sequential evaluation process.  See 20

23  C.F.R. § 404.1520.

24        **IT IS ORDERED** that no later than **March 15, 2024**, any party to this action may file

25  written objections with the Court and serve a copy on all parties.  The document should

26  be captioned "Objections to Report and Recommendation."

27        **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

28  Court and served on all parties no later than **March 22, 2024**.  The parties are advised

that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998), as amended on denial of reh'g (Nov. 24, 1998); Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  March 1, 2024

Honorable Michael S. Berg
United States Magistrate Judge

23cv293-BEN (MSB)